## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JENNIFER BRUNENKANT, | ) | |
|     8702 Bellwood Road | ) | |
|     Bethesda, Maryland 20817, | ) | |
|                 Plaintiff, | ) | |
| | ) | |
| ROXANNE BRUNENKANT, | ) | |
|     1829 28th Street | ) | |
|     Apt # 580 | ) | |
|     Denver, Colorado 80216, | ) | |
|                 Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JOSEPH P. SMITH, | ) | |
|     47 E. 87th Street | ) | **COMPLAINT** |
|     New York, New York 10128-1005, | ) | |
|                 Defendant, | ) | |
| | ) | |
| JOSEPH J. GRILLO, doing business as S. J. Grillo, CPA | ) | |
|     53 Titus Path | ) | |
|     Jericho, New York 11753-1210, | ) | |
|                 Defendant, | ) | |
| | ) | |
| RICHARD F. PASSARELI, | ) | |
|     401 E. 60th Street, #34A | ) | |
|     New York, New York 10022-1597, | ) | |
|                 Defendant, | ) | |
| | ) | |
| JOSEPH C. PHAIR, | ) | |
|     P.O. Box 3055 | ) | |
|     Bridgehampton, New York 11932, | ) | |
|                 Defendant | ) | |
| | ) | |
|     Serve: 2393 Montauk Highway | ) | |
|     Bridgehampton, New York 11968-4980 | ) | |
| | ) | |
| STRATHROY PARK CORPORATION, | ) | |
|     1201 New York Avenue, N.W. | ) | |
|     Washington, D. C. 20005, | ) | |
|                 Defendant, | ) | |

Serve: Professional Registered Agents, Inc.  )
2600 Virginia Avenue, N.W. Suite 1112  )
Washington, D.C. 20037  )
  )
R.J.J.J. Rest. Corp.  )
    809 15th Street N.W.  )
    Washington, D.C. 20005,  )
               Defendant,  )
  )
Serve: Professional Registered Agents, Inc.  )
2600 Virginia Avenue, N.W. Suite 1112  )
Washington, D.C. 20037  )
  )
C. Smith Corporation  )
    135 W. 50th Street  )
    New York, New York, 10020  )
               Defendant.  )

## **COMPLAINT**

Plaintiffs Jennifer Brunenkant ("J. Brunenkant") and Roxanne Brunenkant ("R. Brunenkant") bring this action against Defendants Joseph P. Smith, Joseph J. Grillo, doing business as S.J. Grillo, CPA, Richard F. Passarelli, and Joseph C. Phair to recover fraudulently obtained, withdrawn and transferred funds from three restaurants (Strathroy Park Corporation, RJJJ Rest. Corp. and C. Smith Corporation)(hereinafter referred to as "Restaurant-Defendants").  Plaintiffs are minority shareholders in the Restaurant-Defendants that are under the management and control of Messrs. Smith, Passarelli and Phair (collectively referred to as "Controlling Shareholder Defendants") who conspired with Mr. Grillo to fraudulently transfer monies from the Restaurant-Defendants to Controlling Shareholder Defendants and fraudulently conceal the books and records from other shareholders.  Plaintiffs' share of the proceeds fraudulently obtained, withdrawn

and expensed by Defendants in breach of their fiduciary duties to Plaintiffs exceeds $500,000 plus the reduction in the value of their shares as a result of Plaintiffs' actions has caused Plaintiffs additional damage exceeding an additional $312,500. Plaintiffs assert claims against Defendants for fraud, breach of fiduciary duty, unjust enrichment, civil conspiracy, accounting and for conducting and controlling an Enterprise engaged in a pattern of racketeering activities in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, continuing from 2005 to the present.  Plaintiffs are entitled to recover treble damages to at least $2.4 million and recovery of attorney fees, investigation and litigation costs and pre- and post-judgment interest.

### Parties

1.      Plaintiff Jennifer Brunenkant is citizen of Maryland who resides at 8702 Bellwood Road, Bethesda, Maryland 20817.

2.      Plaintiff Roxanne Brunenkant is a citizen of Colorado who resides at 1829 28th Street, Apt # 580, Denver, Colorado 80216.

3.      Defendant Joseph P. Smith is a citizen of New York who resides at 47 E. 87th Street, New York, New York 10128-1005 and is one of the Controlling Shareholders of the three Restaurant-Defendants (Strathroy Park Corporation, RJJJ Rest. Corp., and C. Smith Corp.)

4.      Defendant Joseph J. Grillo is a citizen of New York who resides at 53 Titus Path, Jericho, New York11753-1210 and who has served as the independent accountant, CPA, financial advisor and business

consultant for the three Restaurant-Defendants. Defendant Joseph J. Grillo operates under the name of S.J. Grillo, CPA.

5.     Defendant Richard F. Passarelli is a citizen of New York who resides at 401 E. 60th Street, # 34A, New York, New York 10022-1597 and who until recently was one of the Controlling Shareholders of the three Restaurant-Defendants.

6.     Defendant Joseph C. Phair is, upon information and belief, a citizen of New York who uses PO Box 3055, Bridgehampton, New York 11932 as residential address, who works at 2393 Montauk Highway, Bridgehampton, New York 11968-4980 and who is one of the Controlling Shareholders of the three Restaurant-Defendants.

7.     Defendant Strathroy Park Corporation is a Delaware corporation with its principal place of business at 1201 New York Avenue, N.W., Washington, DC 20005.  Defendant Strathroy Park Corporation is registered to do business in Washington, DC.

8.     Defendant RJJJ Rest. Corp. is a New York corporation with its principal place of business at 809 15th Street, NW, Washington, DC 20005. Defendant RJJJ Rest. Corp. is registered to do business in Washington, DC.

9.     Defendant C. Smith Corporation is a New York corporation with its principal place of business at 135 W. 50th Street, New York City, New York.

**Jurisdiction and Venue**

10.   This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964.  This Court has supplemental jurisdictional over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims arising under the federal law at issue that they form part of the same case or controversy.

11.   Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendant Strathroy Park Corporation and Defendant RJJJ Rest. Corp. are subject to personal jurisdiction in this judicial district. Both these Defendants maintain their principal place of business in Washington, D.C., transact their affairs here (18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(c)(2)), and a substantial part of the events giving rise to the action occurred in this district (28 U.S.C.§ 1392(a)(2)).  Additionally, personal jurisdiction is obtained over the other defendants in this case under 18 U.S.C. § 1965(b) which provides that process may be served in "any judicial district of the United States" when "required by the ends of justice".  Also, 18 U.S.C. § 1965(d) allows process to be served "in any judicial district where such person resides, is found, has an agent or transacts his affairs".  Accordingly, courts have approved nationwide service of process under both §1965(b) and §1965(d) and found personal jurisdiction is established over all defendants.

**Facts**

12.    On or about August 24, 1999, Messrs. Smith, Passarelli and Phair

(along with a fourth then-Controlling Shareholder, Joseph Hickey)

opened Restaurant-Defendant RJJJ in Washington, D.C.  Messrs. Smith

and Hickey met Plaintiff J. Brunenkant and over the years they met

several times and Mr. Hickey befriended Plaintiff J. Brunenkant's

brother, an attorney in the same building.

13.    On or about June 22, 2005, the Controlling Shareholders, including Mr.

Hickey, formed Strathroy Park Corporation to own and operate a

second restaurant in Washington, DC.  The Controlling Shareholders

asked individuals they knew (including Plaintiff J. Brunenkant and her

brother) if they wanted to invest in this new restaurant.  Shares in this

corporation were to be sold to individual shareholders at $50,000 for

1 share (equal to 1% ownership interest in the corporation). The

Controlling Shareholders said they planned to buy 40% of the shares

and would pay the same amount per share as the non-Controlling

Shareholders.  Plaintiff J. Brunenkant paid $150,000 for her 3%

ownership interest in this corporation. (Although initially held in trust

for her since she had anticipated that the restaurants to be sold

relatively quickly, when no sale materialized the shares were

eventually reissued in her name.)  The Controlling Shareholders told

Plaintiff J. Brunenkant that all shares in this restaurant had been sold.

14.     Sometime later in 2005 or in 2006, the Controlling Shareholder, including Mr. Hickey, indicated they also planned to open up a new restaurant in New York City.  They approached individuals they knew (including Plaintiff J. Brunenkant and her brother) and asked if they wanted to invest in this new restaurant on a basis similar to the new DC restaurant.  The Controlling Shareholders formed C. Smith Corporation to own and operate this new restaurant on 50th Street in New York City.  Shares in this corporation were to be sold to individual shareholders at $50,000 for 1 share (equal to 1% ownership interest in the corporation).  The Controlling Shareholders were to pay the same amount per share as the non-Controlling Shareholders.  Plaintiff J. Brunenkant paid $100,000 for her 2% interest in this corporation. (Although initially held in trust for her since she had anticipated that the restaurants were to be sold relatively quickly, when no sale materialized the shares were eventually reissued in her name.)  The Controlling Shareholders told Plaintiff J. Brunenkant that all the shares in this restaurant had been sold.

15.     The plan of the Controlling Shareholders was to be operating at least 6 restaurants in DC and New York City by the end of 2006 and to then try to sell the restaurants as a group. Controlling Shareholders told Plaintiff J. Brunenkant and her brother that they expected that they

would return 30% per year from the management of these restaurants.

16.     On or about 2007, Plaintiff R. Brunenkant received a 0.5% interest in Defendant RJJJ Restaurant Corp at a cost of $12,500.  Controlling Shareholder Hickey had represented to Plaintiffs that 100% of the shares in this restaurant had been sold in 2000, and that the Controlling Shareholders had given restricted shares to certain key employees but the Controlling Shareholders had paid for those shares. Shares in this corporation were said by the Controlling Shareholders to have been sold to individual shareholders at $25,000 for 1 share (equal to 1% ownership interest in the corporation).  The Controlling Shareholders were said by Mr. Hickey to have paid the same amount per share as the non-Controlling Shareholders.

17.     Over the years additional restaurants were opened by the Controlling Shareholder Defendants (up to at least 12 now), none of the restaurants have been sold, and the restaurants as a group have performed poorly---at least the returns for Plaintiffs have performed badly and far below expectations, but not so for the Controlling Shareholder Defendants.

18.     This case arises from the conspiracy of Controlling Shareholder Defendants to defraud Plaintiffs into overpaying for their shares in the Restaurant-Defendants by excusing the required payment from the Controlling Shareholder Defendants for their shares, collecting

distributions as if they had fully paid for their shares and and then devising a scheme to outright defraud the Restaurant-Defendants. This scheme directly caused Plaintiffs to lose substantial profits from their shares as well as substantially reduced the value of those shares.

19. Defendants' fraud schemes included withdrawing (embezzling) large sums of money from Restaurant-Defendants, charging personal expenses directly to Restaurant-Defendants or seeking unauthorized reimbursement, and charging numerous and significant annual expenses of other restaurants (i.e. Enterprise Restaurants) to the Restaurant-Defendants. This was done to subsidize the costs of Controlling Shareholder Defendants' investment in other restaurants that essentially allowed them to steal from the Restaurant-Defendants to pay for other restaurants that harmed Plaintiffs but largely benefited the Controlling Shareholder Defendants. The unauthorized expenses of other restaurants that were unlawfully charged to Restaurant-Defendants, included Professional Service Fees, China/Glassware/Silverware, and so-called "Employee Wages" and credit card charges.

20. Defendants acted individually and in concert to defraud Plaintiffs. Plaintiffs have been directly damaged by this conduct.

21. Defendants scheme to defraud Plaintiffs began on or about 2005, has been implemented on a monthly basis across the accounts of the three Restaurant-Defendants and continues to the present.

22.     Defendants' scheme was not discovered by Plaintiffs until 2018, and
        Defendants' fraudulent concealment was responsible for Plaintiff's
        delayed discovery.

23.     In 2018, Plaintiffs obtained copies of the 2013-2016 tax returns for
        the three Restaurant-Defendants. For the first time Plaintiffs became
        aware of the widespread theft from the restaurants by the Controlling
        Shareholder Defendants and the extensive scheme by the Controlling
        Shareholder Defendants to systematically strip and divert revenues of
        the Restaurant-Defendants and deplete their assets.

24.     Defendants concealed their illegal activities from Plaintiffs.  Plaintiffs'
        requests for information were ignored by the Controlling Shareholder
        Defendants and without such information Plaintiffs were not able to
        discover the unlawful activities of Defendants.  However, in 2018 the
        Plaintiffs were able to obtain access to the 2013-2016 tax returns of
        the Restaurant-Defendants due to a dispute between the Controlling
        Shareholders. Otherwise Plaintiffs would not have been able to
        uncover the unlawful activities of the Defendants.   This data
        demonstrates the extent of Defendants' scheme and the pattern of
        racketeering activities, and contained enough information to permit
        this complaint to be prepared and filed.

25.     In 2018 Plaintiffs requested more information from Defendants but
        they have not provided any additional information.

26.     An evaluation of this financial information appears to indicate that the

Controlling Shareholders hold approximately 60% of each of the three

Restaurant-Defendants but they have not paid anything for these

shares despite their representations to the contrary.  Thus, they owed

but never paid approximately $2.5 million in Strathroy Park

Corporation.  They owned but they never paid approximately $2.5

million in C. Smith Corporation.  They owed but they never paid

approximately $1.5 million in RJJJ Corp.

27.     In addition to not making their required capital contributions to pay

for their shares, the Controlled Shareholder Defendants received

distributions to which they were not entitled.  They were not entitled

to any distributions on profits since they had not purchased their

shares but it also appears that they inappropriately received

distributions of the capital and monies paid by other non-Controlling

Shareholders.  All these actions in 2013-2016 harmed the Plaintiffs by

reducing distributions to them and also by diverting capital away

from the Restaurant-Defendants.

28.     An evaluation of the 2013-2016 information indicates that some

inappropriate borrowing by the Restaurant-Defendants had taken

place to the detriment of the Plaintiffs and the benefit of the

Controlling Shareholders.  The Restaurant-Defendants were supposed

to be fully funded by the investments by shareholders, including the

Controlling Shareholders.  No Person has any authority to agree to any loan on behalf of any of the Restaurant-Defendants.

29.    In addition to the three Restaurant-Defendants, the Controlling Shareholder Defendants along with different non-Controlling Shareholders own and operate what is believed to be at least 9 other separate restaurants in New York, but mostly using a common brand. The Controlling Shareholder Defendants oversaw bookkeeping for all these restaurants including the two restaurants in Washington, DC at an office belonging to the Controlling Shareholder Defendants (230 Park Avenue, Room 428, New York, NY 10169).  The purpose of the office was to make it easier for the Controlling Shareholder Defendants to control and manage the unlawful withdrawal of funds from the bank accounts of the Restaurant-Defendants, to use these bank accounts to pay the expenses of other restaurants, to embezzle money from the Restaurant-Defendants for their personal use, and manage the interstate mail and wire fraud necessary to accomplish this pattern of racketeering activities.

30.    The Controlling Shareholder Defendants employed Defendant Grillo to prepare tax returns based on incorrect bookkeeping that he knew was not correct.  Defendant Grillo knew that significant costs, expenses and wages being charged by the Controlling Shareholder Defendants had nothing to do with the operations of the Restaurant-

Defendants, and were not properly charged to or withdrawn from the Restaurant-Defendants.

31. A Board of Directors has been never been elected or appointed for any of the three Restaurant-Defendants because the Controlling Shareholder Defendants refused to permit elections or allow interim procedures for the appointment of an initial Board.

32. No officer of the Restaurant-Defendants has ever been appointed by a Board of Directors because the Controlling Shareholder Defendants sought to avoid the oversight of a Board of Directors. Consequently, the Controlling Shareholder Defendants are not entitled to claim any insulation from liability for their actions, which were not within the scope of any legitimate duties as officers, and no Board of Directors authorized or approved their actions.

33. The unauthorized annual withdrawals by the Controlling Shareholder Defendants were never approved by a Board of Directors. For the most parts these withdrawals constituted embezzlements that had nothing to do with any activities the Controlling Shareholder Defendants were authorized to undertake. For example, the tax returns show that Defendant Passareli withdrew from the C. Smith Corporation: $251,401 in 2013; $242,728 in 2014; $388,024 in 2015; and $242,119 in 2016. Tax returns falsely state that Mr. Passarelli spent 80% of his time devoted to C. Smith Corporation matters when in reality he spent 0% of his time doing any work for that corporation.

Assuming this type of fraudulent withdrawals have been taking place since 2006, Mr. Passarelli could have already taken $3.250 million. Mr. Passarelli is not the only Controlling Shareholder Defendant who has fraudulently obtained unauthorized funds from the three Restaurant-Defendants.  The records show that Defendant Phair withdrew $108,289 in 2015 and $110,097 in 2016 from C. Smith Corporation despite the fact that he performed zero work at the restaurant.  This unauthorized withdrawal of funds was camouflaged as part of the Defendants' scheme to strip the Restaurant-Defendants of their assets and defraud Plaintiffs.

34.    On information and belief, the other two Controlling Shareholder Defendants were unaware of Mr. Passarelli's embezzlement from Defendant C. Smith Corporation until some time in 2017 or 2018, but rather than take legal action against Mr. Passarelli on behalf of the Defendant C. Smith Corporation and its other shareholders, Messrs. Smith and Phair arranged to further enrich themselves by having Mr. Passarelli transfer his shares in the three Restaurant-Defendants plus in other restaurants to themselves without providing restitution to Plaintiff J. Brunenkant.

35.    In addition to fraudulent cash withdrawals there are numerous other examples of what appear to be inappropriate costs and expenses charged to the Restaurant-Defendants. The tax returns show that each of the Restaurant-Defendants has extraordinarily high claimed

expenses for "China, Glassware and Silverware".  For example, the

Strathroy Park Corporation claims to have paid $104,541 in 2013,

$103,213 in 2014, $100,147 in 2015 and $91,616 in 2016.  On

information and belief that average actual cost for "China, Glassware

and Silverware" for restaurants the size of Strathroy Park Corporation

would be less than $25,000 per year, shareholders of this corporation

have been bearing more than $74,879 per year (which would

extrapolate to more than $1.12 million for the 2005-2019 period) in

excess or non-existence expenses for just this one expense category.

This type of highly inflated expense is also shown for the other

Restaurant-Defendants.  The C. Smith Corporation paid $116,363 in

2013, $68,508 in 2014, $68376 in 2015 and $68,876 in 2016 which is

$322,123 for "China, Glassware and Silverware" in the 2013-2016

period.  That averages more than $55,530 per year (or more than

$77,420 over the 2006-2109 period) in excess or non-existent

expenses for this one category from this one restaurant.  Using the

same methodology it appears that RJJJ Rest. Corp. (a significantly

smaller restaurant than the two above) managed to expense $249,137

for the 2013-2016 period for "China, Glassware and Silverware"

which would represent $37,284 per year (or more than $484,692 over

the 2007-2019 period) in excess or non-existent expenses.  All these

inflated expenses have improperly diverted revenues away from the

Restaurant-Defendants and reduce the profits and distributions to Plaintiffs.

36. The Controlling Shareholder Defendants treat the Restaurant-Defendants as their personal bank accounts and they have ignored the different ownership interests among the different restaurants.  The restaurants in which the Plaintiffs own minority interests are used by the Controlling Shareholder Defendants to subsidize the losses in other restaurants owned by Controlling Shareholder-Defendants (as part of their Restaurant Enterprise) without accounting for such theft, embezzlement and misuse of funds.  Furthermore, on information and belief, the Controlling Shareholder Defendants used the revenues of the three Restaurant-Defendants to pay the costs and expenses and wages of at least nine other restaurants not affiliated with Plaintiffs, and to reimburse Controlling Shareholder Defendants for their personal expenses.

37. On information and belief, the Controlling Shareholder Defendants forced the Restaurant-Defendants to pay their personal credit card expenses.  One of the largest expense items for a restaurant for the "Bank/Credit Card Charges" and it would be easy for the Controlling Shareholder Defendants to accomplish that.  The involvement of Defendant Grillo is not stopping such practices is further evidence of his involvement and of the conspiracy between the Defendants.

38.     Additionally, the Controlling Shareholder Defendants have used the
cash flow from the Restaurant-Defendants to purchase the ownership
interests of other shareholders.  Thus, no only did the Controlling
Shareholders not pay as yet for their interests but they committed
fraud by directing the cash flow of the restaurants to third parties to
further enhance the ownership interests of the Controlling
Shareholder Defendants. For example, when Defendants Smith and
Phair purchased an option to buy the interests of Mr. Hickey, in
California, they outright stole the money from Restaurant-Defendant
C. Smith and tried to conceal it as if the money had been used for
"Employees Wages". It appears that $50,000.00 is the cut-off for
lumping  salary in the "Employee Wage" category without separately
highlighting it; thus, a payment in this amount to Mr. Hickey in 2017
was fraudulently lumped in with "Employee Wages".  Defendant Grillo
was aware of and participated in attempting to conceal this false
expense from other shareholders. Based on this past history the
records for all past employees' salaries will have to be sorted through
to pull out all instances of fraudulent payments like this.

39.     Another category of false expenses that is part of the pattern of
racketeering activities are the expenses embedded with "Professional
Fees".  For example, C. Smith Corporation expensed $145,480 in 2013,
$88,550 in 2014, and $69,895 in 2015, which exceeded average costs
over this 3-year period by $228,925.  Plaintiffs are unaware of any

reason for C. Smith Corporation to have incurred such large expenses for those years; however, other restaurants controlled by the Controlling Shareholder Defendants (in the Restaurant Enterprise) in those and earlier years incurred substantial legal (due to failure to correctly pay overtime) and Plaintiffs believe that Defendants have been shifting "Professional Fees" from other restaurants to C. Smith Corporation and other Restaurant-Defendants.  This is part of the scheme to defraud Plaintiffs by charging the Restaurant-Defendants for expenses not related to their operations as restaurants.

40.    Defendants' conduct had a substantial effect on interstate commerce as it appears that literally hundreds of false invoices between 2005 to 2018 have been mailed to and from Washington DC, hundreds of fraudulent wire transfers over the same time period have been made all over the US, and interstate telephone lines have been used to discuss and implement the Defendant's fraudulent scheme.

## COUNT I
## (FRAUD)

41.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 40 above.

42.    Controlling Shareholders made false statements and misrepresentations to Plaintiff J. Brunenkant indicating that they would pay the same price for shares in Defendants C. Smith Corporation and Strathroy Park Corporation.

43.    Such statements were false.

44.   Such statements were material because Plaintiff J. Brunenkant would
      never have invested in C. Smith Corporation or Strathroy Park
      Corporation if she had known that all shareholders were not paying
      the same price per share.

45.   Controlling Shareholder Defendants knew when they were raising
      funds from Plaintiff J. Brunenkant and others that they were not
      planning to pay for their shares at the same price being charged to
      minority shareholders.

46.   Controlling Shareholder Defendants knew that their statements to
      Plaintiff J. Brunenkant and other minority shareholders were false
      when made but they intended for Plaintiff J. Brunenkant to act upon
      their statements in the manner reasonably contemplated.

47.   Plaintiff J. Brunenkant was unaware of the falsity of these statements
      by Controlling Shareholders.

48.   Plaintiff J. Brunenkant relied on the truth of these statements in
      making her investments and she had every right to rely on those
      statements.

49.   Plaintiff J. Brunenkant reasonably relied to her detriment upon the
      false statements and misrepresentations by Controlling Shareholders.
      As the intended, direct and proximate result thereof, Plaintiff J.
      Brunenkant was harmed and continues to suffer harm for which the
      Controlling Shareholders are liable.

50.     Plaintiff J. Brunenkant has been damaged by her proportionate share

of the investments not made by the Controlling Shareholders ($2.5

million in C. Smith Corporation and $2.5 Million in Strathroy Park

Corporation) as they had represented they had done. The impact on

Plaintiffs from the Controlled Shareholders' failure to purchase their

shares damaged Plaintiff J. Brunenkant by at least $312,000.00 back in

2005-2006.  However, that amount is significantly expanded after

considering the distributions since 2005 unlawfully withdrawn by the

Controlling Shareholders attributable to shares they never actually

purchased.  Without having paid for their shares the Controlling

Shareholders were not entitled to distributions on those shares.  This

amount will be determined at trial.

## COUNT II
### (Breach of Fiduciary Duty)

51.     Plaintiffs reallege and incorporate herein by reference the allegations

contained in paragraphs 1 through 50 above.

52.     The Controlling Shareholder Defendants owed the Plaintiffs a

fiduciary duty to properly supervise the management and operations

of the three Restaurant-Defendants.  And, where they appointed each

other as officers and managers, they had a duty of fair dealings as well

as a fiduciary duty to honestly manage the restaurants for the benefit

and profit of all the shareholders including the Plaintiffs.  The

Controlling Shareholder Defendants breached their fiduciary duties

and responsibilities to Plaintiffs as majority shareholders, managers
and officers.

53.     The three Controlling Shareholder Defendants withdrew
unauthorized funds of money from the Restaurant-Defendants that
were never authorized by a Board of Directors and had nothing to do
with any authorized activities on behalf of the restaurants.  In addition
to embezzling funds, they used the funds from the restaurants to pay
for their personal expenses, they used revenues from the restaurants
to purchase personal assets for themselves, they systematically
transferred cash between different restaurants and used cash from
the restaurants where Plaintiffs were minority shareholders to fund
the costs and expenses of other restaurants owned by Controlling
Shareholder Defendants but not by Plaintiffs.  The Controlling
Shareholder Defendants routinely violated their fiduciary duty to
Plaintiffs.

54.     The full extent of the fraudulent withdrawals and transfers against the
interest of the Restaurant-Defendants by the Controlling Shareholder
Defendants may have easily exceeded $10 million. Just reviewing the
2013-2016 financial data obtained by Plaintiffs indicates excessive
withdrawals labeled as "Officer" compensation.  And while Mr.
Passarelli embezzled more than $1 million from 2013-2016 just from
C. Smith Corporation, he also embezzled substantial sums from RJJJ
Rest. Corp although not as extreme as what he withdrew from C.

Smith Corporation.  Mr. Passarelli's embezzlements are further established by the fact that he was not involved with the management or operations of either restaurant. All these unauthorized withdrawals constituting embezzlements must be repaid, or at least the harm to Plaintiffs must be addressed.  Similarly, (although not to the extent of Mr. Passarelli), Messrs. Smith and Phair also withdrew large sums for "Officer" compensation where such amounts were never voted on or otherwise approved by a Board of Directors.

55.  Plaintiffs have been damaged by the Controlling Shareholder Defendants by breach of the fiduciary duty they owed to them in an amount in excess of  $1 million just on the basis of the information now known.  That amount is expected to increase substantially as the books and records for the entire 2005-2019 period are examined.

## COUNT III
### (Breach of Fiduciary Duty-Accountant)

56.  Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 55 above.

57.  Defendant Joseph Grillo is the accountant for each of the three Restaurant-Defendants.  He also prepared the tax returns for each Restaurant-Defendant plus he did the accounting and tax returns for other restaurant and businesses of the Controlling Shareholders Defendants.  Mr. Grillo is aware of all the monies unlawfully withdrawn from the Restaurant-Defendants by the Controlling Shareholder Defendants.

58.     Defendant Grillo owed a fiduciary duty to the Restaurant-Defendants
        and the Plaintiffs to ensure that the books, records and tax returns of
        the Restaurant-Defendants were honestly and properly maintained.
        Where the Controlling Shareholder Defendants improperly paid
        themselves unauthorized amounts and improperly transferred funds
        to pay for costs and expenses not having to do with the business
        operations of the Restaurant-Defendants, Mr. Grillo was obligated not
        to prepare records or tax filings that reflect such unlawful and
        improper payments and intentionally misled the Plaintiff.

59.     Mr. Grillo breached his fiduciary duties by enabling the Controlling
        Shareholder Defendants to divert revenues and dissipate assets.  For
        example, even if the other two Controlling Shareholders had been
        unaware the Mr. Passarelli was embezzling funds (as Plaintiffs were
        advised by one of the Controlling Shareholder Defendants); Mr. Grillo
        clearly knew such withdrawals were unauthorized.  He knew Mr.
        Passarelli did not work at the restaurant owned by C. Smith
        Corporation nevertheless he prepared tax documents asserting that
        Mr. Passarelli worked 80% of his time there. Mr. Grillo maintained
        false accounts and filed false tax deductions contrary to the interests
        of the Restaurant-Defendants and Plaintiffs.

60.     Plaintiffs have been damaged by Mr. Grillo's breach of the fiduciary
        duty he owed to them in an amount in excess of $812,500.00 but the
        precise amount will be determined at trial.

**COUNT IV**
**(Accounting)**

61.     Plaintiffs reallege and incorporate herein by reference the allegations

contained in paragraphs 1 through 60 above.

62.     The Controlling Shareholder Defendants have routinely abused the

trust of Plaintiffs with using corporate funds for personal uses

seemingly without limit.  Controlling Shareholder Defendants have

failed and refused to account to Plaintiffs for the use of the funds

generated by the ongoing restaurant operations.  Accordingly, the full

extent of the harm caused to Plaintiffs needs to be accounted for.

63.     Plaintiffs demand and are entitled to a full accounting from

defendants of all monies invested in the restaurants and revenues

generated by the restaurants as well as all amounts spent or

transferred out of the restaurant accounts, and an accounting of the

actual cost of all items for which defendants sought and obtained

reimbursement, all revenues received by the restaurants and each and

every cost item.

**COUNT  V**
**(Unjust Enrichment)**

64.     Plaintiffs reallege and incorporate by reference the allegations

contained in paragraphs 1 through 63 above.

65.     The Controlling Shareholder Defendants have been unjustly enriched

by the amounts they have embezzled and withdrawn as unauthorized

compensation for non-existent work, for distributions on ownership

interests not paid for, for reimbursement of personal expenses, for
purchase of shares of others, for the ownership interests of Mr.
Passarelli in the Restaurant-Defendants, for their own unpaid
ownership interests and for the amounts paid by and on behalf of
other restaurants and companies owned or controlled by the
Controlling Shareholders.

66.    Controlling Shareholder Defendants in equity and good conscience
should pay to Plaintiffs as a result of their unjust enrichment an
amount in excess of $812,500.00 with the precise amount to be
determined at trial.

## COUNT VI
### (Unfair or Deceptive Trade Practices)

67.    Plaintiffs reallege and incorporate by reference the allegations
contained in paragraphs 1 through 66 above.

68.    Under the District of Columbia Consumer Protection Act ("CPPA"),
D.C. Code § 28-3901, et seq. a person engages in unfair or deceptive
trade practices by violating §28-3904(e) by misrepresenting a
material fact that has tendency to mislead.

69.    Plaintiff J. Brunenkant invested monies in C. Smith Corporation and
Strathroy Park Corporation after being told by a Controlling
Shareholder in Washington, DC that all the Controlling Shareholders
would pay the same amount per share as all other shareholders.
Plaintiff J. Brunenkant invested on that basis.

70.     The statement regarding the price to be paid by the Controlling

        Shareholders was a material fact.

71.     This statement by the Controlling Shareholders was meant to be

        misleading in order to convince Plaintiff J. Brunenkant to invest funds.

72.     Plaintiffs have been damaged by the Controlling Shareholders'

        material misrepresentations in an amount that exceeds $812,500.00.

## COUNT VII
### (Civil Conspiracy)

73.     Plaintiffs reallege and incorporate by reference the allegations

        contained in paragraphs 1 through 72 above.

74.     The Defendants entered into an agreement to defraud Plaintiff J.

        Brunenkant and to unlawfully withdraw monies from the Restaurant-

        Defendants, to charge unauthorized expenses and to dissipate the

        assets of the Restaurant-Defendants.

75.     The actions of Defendants have been coordinated among themselves

        in furtherance of a common scheme where they have been regularly

        making misrepresentations and making unlawful withdrawals and

        hiding their actions from Plaintiffs.

76.     Plaintiffs have been injured by the unlawful actions of Defendants by

        an amount in excess of $812,500.00.

## COUNT VIII
### (Federal Civil RICO, 18 U.S. § 1962(c))

77.     Plaintiffs reallege and incorporate herein by reference the allegations

        contained in paragraphs 1 through 76 above.

78.   Defendants violated RICO and Plaintiffs were injured as a result.

79.   Each Defendant is a "person": capable of holding legal or beneficial

interest in property within the meaning of 18 U.S.C. § 1961(3).

80.   Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in

the prior paragraphs, and as further described below.

81.   "The Restaurant Enterprise" includes the following restaurants (i)

JJJ&R Corporation, 230 Park Avenue, NY, NY 10169, (ii) Herbert Street

LLC, 131 54th Street, NY, NY 10022, (iii) Defendant C. Smith

Corporation, (iv) J. Caldwell Corp, 25 Broad Street, NY, NY 10004, (v)

Veronica & Josephine Corp, 120 West 45th Street, NY, NY 10036, (vi)

BV at JKF, Inc., JFK Airport, American Airlines—Terminal 8, Queens,

NY 11422, (vii) BV Burger, 120 West 45th Street (Courtyard), NY, NY

10036, (viii) Defendant Strathroy Park Corp, (ix) Defendant RJJJ Rest.

Corp, (x) Ardoyne Corporation, 2393 Montauk Highway,

Bridgehampton, NY 11932, (xi) Lea Wine Bar, 230 Park Avenue, East

Helmsley Walkway, NY, NY 10169, and (xii) Sotto Sopra, 231 Main

Street, Amagansett, NY 11930, which form an association-in-fact for

the common and continuing purpose described herein and constitute

an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in

the conduct of their affairs through a continuing pattern of

racketeering activity.  The members of this Restaurant Enterprise

functioned as a continuing unit with an ascertainable structure

separate and distinct from that of the conduct of the pattern of racketeering activity.

82.     The Restaurant Enterprise has engaged in, and their activities have affected interstate commerce.

83.     Pattern of Racketeering Activity.  Defendants, each of who are persons associated with, or employed by, the Restaurant Enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c).  The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.  Defendant's had the specific intent to engage in the substantive RICO violation alleged herein.

84.     Predicate acts of racketeering activity are acts that are indictable under the provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.  Defendants each committed at least two such acts or else aided and abetted such acts.

85.     The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.  Further, the acts of racketeering by Defendants have been continuous.  There was repeated conduct during a period beginning in approximately

2005 and continuing to the present, and there is a continued threat of repetition of such conduct.

86.   The Restaurant Enterprise, as alleged herein, is not limited to the predicate acts and extended beyond the racketeering activity.  Rather, it existed separate and apart from the pattern of racketeering activity for the legitimate purpose of owning and operating restaurants.  Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

87.   Plaintiffs specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.

88.   The Defendants use of the U.S. mails and interstate wires were the predicate acts used to defraud Plaintiffs in violation of 18 U.S.C. §§ 1341 and 1343.  Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1443 in that they devised or intended to devise scheme or artifice to defraud Plaintiffs or to obtain money from Plaintiffs by means of false or fraudulent pretenses, representations or promises.  For purposes of executing their scheme or artifice, Defendants caused delivery of various documents and things by U.S. mails or by private or commercial interstate carriers, or received such therefrom.  Defendants also transmitted or caused to be

transmitted by means of wire communications in interstate commerce various writings, signs and signals.  The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

89.     Defendants carried out their scheme in different states and could have not done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires.  In furtherance of their scheme alleged herein Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud Plaintiffs.  These communications were typically transmitted by wire (i.e. electronically) and/or through the United States mails or private or commercial carriers.  Defendants also transmitted or caused the agreement between the Controlling Shareholder Defendants to hide Defendant Passarelli's embezzlement (paragraph 34) to be transmitted by mail or wire during the course of those negotiations instead of seeking resolution of the $3.5 million embezzlement.

90.     Specifically, Controlling Shareholder Defendants and Defendant Grillo have used wire and/or U.S. mail or private or commercial carriers to continue the fraud against Plaintiffs from 20005 to the present.

91.     Defendants used the wires to transmit millions in dollars from the accounts of the Restaurant-Defendants to or for the benefit of the Controlling Shareholder Defendants.

92.     The shared objective of Defendants Smith, Passarelli, Grillo and Phair was and is to divert funds to their own benefit and to defraud Plaintiffs.

93.     Plaintiffs reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and Plaintiffs have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

94.     Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constituted a continuous course of conduct spanning the period from approximately 2005 to the present, which was intended to obtain money from false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

95.     Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the affairs of the alleged enterprise through a pattern of racketeering activity as defined in violation of 18 U.S.C. § 1962(c).

96.     The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to

Plaintiffs.  Plaintiffs seek an award of damages in compensation for, among other things, their proportionate share of the millions of dollars stole by Defendants.

97.    Plaintiffs accordingly seek an award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and cost of investigation and litigation, as well as any other relief as authorized by statute.

**COUNT IX**
**(Conspiracy to Violate Civil RICO, 18 U.S.C § 1962(d))**

98.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 97 above.

99.    In violation of 18 U.S.C. § 1962(d), the Defendants, and each of them, knowingly, willfully and unlawfully conspired to facilitate a scheme that included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above in violation of 18 U.S.C § 1962(c).  In addition, the Controlling Shareholder Defendants willfully and unlawfully conspired to acquire or control an interest in the Enterprise through a pattern of racketeering activity as alleged above in violation of 18 U.S.C. §1962(b).

100.   The conspiracy commenced at least as early as 1993 and is ongoing.

101.   The conspiracy's purpose was to defraud Plaintiffs by diverting money from Plaintiff's minority interests in Restaurant-Defendants to unlawfully enrich Controlling Shareholder Defendants.

102. The conspiracy's additional purpose was to allow the Controlling
Shareholder Defendants to acquire an interest in the Restaurant
Enterprise without paying for their shares in order to maintain
control.

103. Each Defendant committed at least one overt act in furtherance of
such conspiracy.  These acts in furtherance of the conspiracy included,
misleading Plaintiffs as to the actual funds being raised through the
use of mails and interstate wires in interstate commerce as capital for
Restaurant-Defendants so as to overcharge Plaintiffs and then
participating in a pattern of racketeering activity to siphon away the
bulk of the net operating income from the Restaurant-Defendants.

104. Even if some of the Defendants did not agree to harm Plaintiffs
specifically, the purpose of the acts they engaged in was to advance
the overall object of the conspiracy, and the harm to Plaintiffs was a
reasonably foreseeable consequence of Defendants' actions.

105. Plaintiffs have been injured and continue to be injured in their
business and property by Defendants' conspiracy in violation of 18
U.S.C. § 1962(d).  The unlawful actions of Defendants, and each of
them, have directly, illegally, and proximately caused and continue to
cause injuries to Plaintiffs in their business or property.  Plaintiffs
seek an award of damages in compensation for, among other things,
their proportionate share of the millions of dollars that Defendants
stole from non-controlling shareholders.  Plaintiffs further seek an

award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as other relief as authorized.

## PRAYERS FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court:

1.  Enter judgment in their favor against the Defendants on all Counts of the Complaint.

2.  Find damages they sustained as a result of Defendants' conduct pursuant to Counts I-IX including whatever amounts were previously distributed to any and all Controlling Shareholders on shares they failed to pay for and punitive damages based on the evidence submitted at trial.

3.  Enter an order awarding Plaintiffs treble damages as a result of Defendants' civil RICO violations in the amount of $2,437,500.00.

4.  Enter an order cancelling all shares of Controlling Shareholder Defendants in the Restaurant-Defendants where the evidence proves that they never paid for the shares;

5.  Award Plaintiffs their attorney fees, costs and pre- and post-judgment interest; and

6.  Grant such other relief as this Court deems just and proper.


Respectfully submitted,

**JENNIFER BRUNENKANT**
**ROXANNE BRUNENKANT**

/s/ Jon L. Brunenkant
_____

Jon L. Brunenkant
Brunenkant & Associates, PLLC
1155 F Street, NW
Suite 1050
Washington, DC 20004
(202) 494-4102
jonbrunenkant@gmail.com
DC Bar # 966630

Timothy J. Battle
Law Office of Timothy J. Battle
524 King Street
Alexandria, Virginia 22314
(703) 836-1216
tjbattle@verizon.net
DC Bar # 306092

Attorneys for Plaintiffs

July 5, 2019